CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 26, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICKIE LEE HILL, | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00530 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| J.A. NESTER, | ) | Chief United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

*Pro se* plaintiff Rickie Lee Hill, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against two defendants, J.A. Nester and H. Abbott. Hill alleges claims for retaliation and discrimination that occurred when he was an inmate at Green Rock Correctional Center (GRCC). (Compl., Dkt. No. 1.)Previously, the court granted a motion to dismiss filed by Abbott and dismissed Hill's claims against her. (Dkt. No. 35, 36.) The court dismissed Hill's claims against Abbott, and in the same order, denied a motion for summary judgment filed by Hill. (Dkt. Nos. 35, 36.) The court also denied Hill's motion for injunctive relief seeking a transfer and claiming that there are hidden cameras in his cell at Wallens Ridge. (*Id.*)

Now before the court is a motion for summary judgment filed by Nester. (Dkt. No. 45.) The court granted Hill an extension of time to respond to the motion for summary judgment on February 27, 2026 (Dkt. No. 55), but Hill filed no response to the motion. Hill has, however, filed six motions for injunctive relief. (Dkt. Nos. 37, 50, 52, 54, 62, 67.) Nester responded to these motions (*see* Dkt. Nos. 42, 51, 60, 64, 68), and Hill filed reply briefs in support of these motions (Dkt. Nos. 56, 58, 65).

For the reasons stated below, Nester's motion for summary judgment will be granted, Hill's motions for preliminary injunctive relief will be denied, and the court will enter an order dismissing this case in its entirety.

## I. BACKGROUND

### A. Hill's Complaint[1]

Hill alleges that on July 1, 2024, he submitted a Prison Rape Elimination Act (PREA) complaint against a staff member named Hairston. (Compl. 2.) Hill wrote that "after y'all do yalls thang," Hill would accept certain items in exchange for not pursuing a lawsuit against Hairston. (*Id.* at 4.) On July 2, Nester wrote a charge against Hill for Solicitation of Staff Misconduct. (*See* Ex. 3, Dkt. No. 1-2 at 6.) Nester also gave Hill a threatening letter stating that if Hill wrote another PREA complaint, Nester would write another charge against him. After this, Hill became scared to pursue any claims or complaints about sexual harassment. (Compl. 5.) Hill alleges claims against Nester for retaliation in response for exercising First Amendment rights and an equal protection violation because he was the only prisoner to receive a 135 charge (Solicitation of Staff Misconduct) from Nester.

### B. Nester's Motion for Summary Judgment

Nester submitted an affidavit in support of his motion for summary judgment. (Dkt. No. 51-1.)

Nester is a former Intel Officer, current Sergeant, at GRCC. (Nester Aff. ¶ 1.) On June 28, 2024, Hill submitted an Emergency Grievance, which stated that on June 21, 2024, while being strip searched, an officer identified as "C/O A"[2] made a comment to Hill about his penis

---

[1] Hill's complaint is verified. (Compl. 3.)

[2] As noted above, Hill identifies this individual as Hairston.

and told Hill to show him his penis or he would give away Hill's JPay device. (Nester Aff. ¶ 4, Encl. A.)

VDOC Operating Procedure 038.3, *Prison Rape Elimination Act*, provides guidance on the requirements of the PREA and compliance with PREA National Standards within VDOC. If an inmate claims that he was sexually abused, he can make a PREA report, which will be investigated and corrective action will be taken if the claim is substantiated. (Nester Aff. ¶ 5, Encl. B.)

Hill's Emergency Grievance was referred for a PREA investigation. Nester was assigned to investigate the claim. Nester conducted an interview with Hill on July 1, 2024. In a written statement, Hill said, "If he is willing to settle this before y'all do y'll thang [sic], I want the following." Hill then said that he had settled multiple PREA lawsuits and had forced other correctional officers to resign. Hill asked for a new television, new clothing items "of everything on the personal property list," the "interstate compact items" that he was not allowed to possess, a single cell in the Shared Allied Management unit, a job, and $1,000 in commissary credit. (Nester Aff. ¶ 6, Encl. C.)

During the investigation, Nester reviewed video footage of Hill's housing unit for June 21 and 22, 2024. The footage showed staff making proper rounds in the unit.[3] The night shift staff was interviewed, and all deny that any incident of sexual misconduct occurred. No alleged perpetrator could be identified, and no staff fit the description given by Hill. Thus, the investigation showed that Hill's allegation was unfounded. (Nester Aff. ¶ 7.)

OP 038.3 provides that any inmate who makes a report of inmate sexual violence or staff misconduct or harassment that is determined to be false may be charged with a disciplinary

[3] The footage has not been provided to the court.

offense if it is determined in consultation with the Regional PREA Analyst that the report was made in bad faith. (Nester Aff. ¶ 8.) Nester reached the conclusion that Hill's complaint was submitted in bad faith. VDOC's PREA process is designed to detect, prevent, and reduce sexual assault and harassment through training, investigation, and corrective action. The process does not offer monetary damages or similar remedies to inmates, and staff cannot offer benefits to an inmate in exchange for the inmate withdrawing his complaint. Hill's offer to withdraw his complaint in exchange for personal property (including items considered contraband), a favorable cell assignment, and commissary credit caused Nester to believe that Hill had falsely submitted his complaint to obtain personal benefits. (*Id.* ¶ 9.)

On July 2, 2024, after consulting with the Western Region PREA Analyst and the administration at GRCC, Nester placed a disciplinary charge against Hill for Solicitation of Staff Misconduct. Hill refused to participate in the hearing for this charge. The hearings officer found him guilty based on a preponderance of the evidence and assessed a $10 dollar fine. (*Id.* ¶ 10, Encl. D.)

Also on July 2, 2024, Nester issued a letter to Hill informing him that his PREA allegation had been investigated and was determined to be unfounded. The letter stated that disciplinary action would be taken if another action was determined to be unfounded. (Nester Aff. ¶ 11.)

**C. Hill's Motions for Injunctive Relief**

Hill, as noted, filed six motions requesting injunctive relief. The first motion reflects that Hill is detained at Wallens Ridge State Prison. (Dkt. No. 37.) Hill complains about micro cameras and technology in his cell to "detect exposed penises/skin, and erections." (*Id.*) Hill requests a transfer to a different facility. In the second motion, Hill asks the court to intervene

and order that his legal work and property be returned to him. He wants a different cell and asks to be transferred to a different facility. Hill claims that his cell has “blue water coming out of the faucet” and staff is “using me as a sex slave to piss, get erections while sleep, and they film a video of me to the internet.” (Dkt. No. 50.) In the third motion, Hill again claims that he is being forced to be a sex slave at Wallens Ridge, and he asks for a transfer. (Dkt. No. 52.)

In his fourth motion, Hill asks the court to order that VDOC employees stop taking his personal property and stop giving copies of his legal paperwork to gang members. Hill also requests a transfer from Wallens Ridge to a facility in North Carolina. (Dkt. No. 54.) In the fifth motion, Hill indicates that he has been transferred to River North Correctional Center. He claims that when he arrived at River North, Wallens Ridge staff used the speaker to identify Hill as a sex offender and snitch, placing his life in danger with gang members. Hill again requests a transfer to North Carolina. (Dkt. No. 62.) In the sixth and final motion, Hill states that he has been transferred to Red Onion State Prison. Hill claims that his legal paperwork has been stolen by other inmates and requests an order directing prison officials to retrieve the paperwork. (Dkt. No. 67.)

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585–86 (1986). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

**B. Retaliation**

Hill claims that Nester issued a disciplinary charge against him in retaliation for filing a PREA complaint. To succeed on a First Amendment retaliation claim, plaintiff must show that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). In the prison context, courts "treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Nester concedes that the first two elements can be satisfied by Hill. Under the third element, courts do not consider "whether the defendant would have reached the same decision absent the plaintiff's protected conduct, but whether the defendant would have reached the same decision absent a retaliatory motive." *Martin v. Duffy*, 977 F.3d 294, 303–04 (4th Cir. 2020). Nester's affidavit establishes that he issued the disciplinary charge against Hill because Hill submitted an unfounded and bad faith claim of sexual harassment. Hill's attempt to negotiate for

compensation in exchange for withdrawing his complaint, to which Hill admits, was suggestive of bad faith because such relief is not available under the VDOC's PREA policy. Similarly, Nester did not act with a retaliatory motive when he issued the letter stating that disciplinary action would be taken if another action was determined to be unfounded. That letter grew out of the same investigation showing that Hill acted in bad faith; thus, Nester did not act out of retaliation for Hill's protected conduct.

For these reasons, Nester is entitled to summary judgment on Hill's retaliation claim.

**C. Equal Protection**

Hill asserts an equal protection claim against Nester based on the allegation that he was the only inmate to receive a solicitation of staff misconduct charge.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Hill must allege that: (1) he and a comparator inmate were treated differently and were similarly situated; and (2) the different treatment resulted from discrimination. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Not only has Hill failed to identify any similarly situated comparators who received different treatment, he affirmatively states in the grievance, that he attached as an exhibit, that it is normal practice to charge inmates as a way to discourage PREA complaints (Dkt. No. 1-2 at 2). Furthermore, Hill has failed to put forth facts showing that Nester acted with intent to discriminate against him. Accordingly, plaintiff has failed to allege a plausible equal protection claim. *See Wilson v. Laureano*, Civil No. 3:22cv692 (DJN), 2024 WL 1683616, at *3 (E.D. Va. Apr. 18, 2024) (dismissing prisoner equal protection claim for failure to state a claim).

For these reasons, the court will grant summary judgment to Nester on the equal protection claim.

**D. Hill's Motions for Injunctive Relief**

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The judiciary grants "wide-ranging deference" to prison administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

Hill has not established any of the elements required for the entry of a preliminary injunction. Moreover, Hill's complaint involves his treatment at GRCC, but his motions for injunctive relief complain about conditions at other facilities. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *7 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Accordingly, Hill's motions for injunctive relief will be denied.

## III. CONCLUSION

The court will issue an appropriate order granting Nester's motion for summary judgment, denying Hill's motions for preliminary injunctive relief, and dismissing this case in its entirety.

Entered: August 26, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge